UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas L. KUBECK, Defendant-
Appellant.

No. 73-1200.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 15, 1973.

Decided Dec. 7, 1973.

James F. Finn, Detroit, Mich., for defendant-appellant.

John J. Conley, Detroit, Mich., for plaintiff-appellee; Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., on brief.

Before WEICK, MILLER and LIVELY, Circuit Judges.

WEICK, Circuit Judge.

Appellant Kubeck was indicted in the District Court on one count of a four-count indictment which charged him, along with Dennis Lukasik and William Hall, with concealing from the Department of Housing and Urban Development, a material fact in connection with an FHA mortgage-loan application, in violation of 18 U.S.C. § 1001. They were tried by a jury which returned a verdict of guilty against all three, Kubeck, Lukasik and Hall. We consider here only the appeal of Kubeck from his judgment of conviction.

The facts are substantially as follows: In June, 1970, Linda Avery and Judith Wirgau, both divorcees, who were living together with their children in a rented house, decided to purchase a home.

They were both recipients of aid for dependent children (ADC). Mrs. Wirgau contacted her friend, a real estate salesman, Dennis Lukasik, to assist them. She told Lukasik that they would like to acquire a house located at St. Clair Shores, Michigan. Lukasik knew that these women had very little money and could not make very much of a down payment. Lukasik suggested to them that they should first acquire a property in Ferndale, Michigan, to be financed with an FHA mortgage Plan 221(d)(2), and then trade the Ferndale property for the house on St. Clair Shores at a later time. The women were shown only a photograph of the Ferndale property.

William Hall, who was a real estate broker operating a real estate business, owned a residence property located at St. Clair Shores. Hall had also arranged to purchase the Ferndale property from Mr. and Mrs. David Donald, the then owners, but he needed financing. Hall was not eligible for an FHA loan under Plan 221(d)(2).

In order to qualify for a Plan 221(d)(2) loan it is necessary that the mortgagor occupy the property after the date of closing, and that papers submitted to the Department of Housing and Urban Development after the closing verify such occupancy. A Housing Department employee identified a letter signed by the two women stating that they were sisters and that they would both reside at the Ferndale residence, and also another document signed by both women stating that one of them was the occupant of such premises.

The closing of the Ferndale property deal took place in October, 1970, at the offices of a title company. Jack Pomeroy, a real estate broker who was present at the closing, testified that Kubeck was present at the closing; that his (Pomeroy's) files so indicated; and that Kubeck was representing Hall. Mr. and Mrs. David Donald, from whom the Halls were acquiring the Ferndale property, were present. Lukasik also was present. The Halls had previously executed a deed conveying the Ferndale property to the two women. The two women were present at the closing, and signed a number of documents; they testified that an unidentified representative of Hall was present. They also testified that after the closing they left the building and went to Lukasik's car, where they were introduced to Thomas Kubeck. Both women identified Kubeck as the man who was in the car.

Kubeck told the two women that they were going to "sign off on the house" as part of the exchange deal. They signed the deed for the Ferndale house to William Hall and his wife, while they were in the automobile. The fact that both women were able to identify Kubeck as being the man in the car, but could not identify him as being at the closing, does not necessarily mean that he was not present at the closing. The women had displayed erratic memories as to certain events in the case, and the jury could have easily credited Pomeroy's testimony and the notes in his file.

Kubeck was the agent of Hall. He took the acknowledgment of Mr. and Mrs. Hall as Notary Public, and witnessed their signatures on their deed to the two women. This deed necessarily was at the office of the title company at the closing and had to be filed for record in order to establish title in the two women so they could execute the FHA note and mortgage. Kubeck also witnessed the signatures and took the acknowledgments of the two women on their deed back to the Halls.

It was uncontroverted that the women never lived in the Ferndale property, and that they were not sisters.

Judith Wirgau testified that she made subsequent phone calls to Kubeck to find out when the property in St. Clair Shores would be ready for transfer to them. Kubeck informed her that the occupant of the house in St. Clair Shores, which Kubeck supposedly was trying to obtain for the women, would not respond to his messages. Patricia Dodge, the occupant of this particular house in St.

Clair Shores (who was renting it from William Hall), testified that she was never notified by the owner of any intent to sell.

Mrs. Wirgau testified that Kubeck found another residence for them to rent, which residence was owned by Hall, and which was in a bad state of disrepair; and that they lived in that Hall property only two days.

At the close of the Government's case Kubeck's attorney moved for judgment of acquittal on the ground of insufficient evidence. This motion was denied. Only character testimony was presented on behalf of Lukasik, who was represented by separate counsel. No testimony was offered in defense of Kubeck. When the other defendants rested Kubeck did not renew his motion for judgment of acquittal.

Kubeck challenges the sufficiency of the evidence to sustain the conviction. He contends that the proof did not establish that he had knowledge of the fraud. The Government contends, first, that Kubeck waived his right to challenge the sufficiency of the evidence, since he did not renew his motion for a directed verdict at the close of the defendant's case; and second, that the evidence, although circumstantial, is sufficient to sustain the conviction.

On the procedural point, the Government cited numerous cases to sustain its contention that a waiver of the right to challenge the sufficiency of the evidence has taken place because of the failure to renew the motion for acquittal at the close of defendant's case. The Government relies on *Rood v. United States,* 340 F.2d 506 (8th Cir. 1965); *Lucas v. United States,* 325 F.2d 867 (9th Cir. 1963); *United States v. George,* 319 F. 2d 77, 79 (6th Cir. 1963); and *Gendron v. United States,* 295 F.2d 897, 900 (8th Cir. 1961).

■ In all the cases cited by the Government, the defendant moved for acquittal at the close of the Government's case, and after this motion was denied the defendants then either testified or

offered other evidence. The rationale of these cases was that the presentation of a defense served as a withdrawal of the acquittal motion, and therefore, a new motion was required at the close of defendant's case to preserve the evidentiary point as a ground of appeal. In our case, however, Kubeck offered no evidence after he had rested, and consequently he did not withdraw his original acquittal motion. Thus, Kubeck is not now barred from raising the sufficiency of the evidence point at this time.

The theory of the Government was that William Hall desired to obtain an FHA mortgage to finance the purchase of the Ferndale property which he wished to buy from the Donalds; however, Hall could not qualify for an FHA mortgage. It was the Government's position that Hall had Lukasik and Kubeck, both of whom were real estate salesmen, aid him in a scheme to secure these advantages, to which he (Hall) was not entitled. Lukasik was to persuade the two women to take title to the Ferndale property and to apply for the FHA loan. The women would execute the note and mortgage required in the FHA financing, and then would reconvey the property to Hall.

■ The standard for review of a sufficiency of the evidence question, when a person has been convicted, was stated by this Court in *United States v. Conti,* 339 F.2d 10 (6th Cir. 1964).

In considering a contention by an appellant that the evidence is insufficient to support a judgment of conviction, an appellate court will reverse the judgment if it is not supported by substantial and competent evidence, but will not disturb a conviction supported by such evidence. *Glasser v. United States,* 315 U.S. 60, 80, 62 S. Ct. 457, 86 L.Ed. 680, rehearing denied, 315 U.S. 827, 62 S.Ct. 637, 86 L. Ed. 1222; *United States v. Knight,* 336 U.S. 505, 508, 69 S.Ct. 704, 93 L. Ed. 845; *United States v. Decker,* supra, 304 F.2d 702, 705, C.A. 6th. In making such a determination the

Court must take that view of the evidence with inferences reasonably and justifiably to be drawn therefrom most favorable to the Government, without weighing the evidence or determining the credibility of the witnesses. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Battjes v. United States, 172 F.2d 1, 5, C.A. 6th; Kowalchuk v. United States, 176 F.2d 873, 876, C.A. 6th; Apel v. United States, 247 F.2d 277, 279–280, C.A. 8th; N.L.R.B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660. (*Id.* at 13)

■ Applying this standard, the Court is of the opinion that ample evidence exists to support the jury's finding that Kubeck had knowledge of, and either concealed or aided and abetted in concealing, false representations to the Department of Housing and Urban Development. First, there was some testimony that Kubeck was present at the closing, where the necessary papers were signed; second, there was undisputed testimony that Kubeck was in Lukasik's car immediately after the closing and persuaded the two women to reconvey the Ferndale property to Hall. Thus, the women actually owned the Ferndale property for a few minutes which at least was sufficient for them to execute the FHA mortgage. Kubeck clearly knew that the women had no intention of living in the house.

The Government introduced in evidence the deed from the William Halls to the two women, and also the deed from the two women back to the Halls. The deeds reflected on their face the fact that Thomas Kubeck witnessed and acknowledged both documents.

There was uncontradicted testimony that the warranty deed from the women back to the Halls was signed by them on October 27, 1970; but the deed as recorded has a date, January 6, 1971, printed on top of the typed October 27, 1970-date. Kubeck's Notary certificate at the bottom of this deed recited that the deed was signed before him on January 6, 1971. From this the jury could have concluded easily that Kubeck altered this deed and delayed the recording thereof to hinder FHA officials in discovering the fraud.

From the known facts the jury could have concluded that Kubeck was deeply involved in fraudulent activity. One does not leave the closing of a real estate transaction in the office of a title company and go immediately to the back seat of an automobile and there arrange to reconvey the property to the sellers, without thinking that something is wrong. Even the women testified that they asked Kubeck, while they were in the car, if what they were doing was illegal. Kubeck told them, "It's done this way in the real estate business all the time."

From Kubeck's knowledge of real estate practices and his association with Hall, who was his employer, the jury could have found that Kubeck had knowledge of the existence of the representations contained in the application for the FHA mortgage. He also knew that the two women were not going to live in the Ferndale house.

The two women did not secure the home they desired at St. Clair Shores. They were able only to rent a dilapidated home owned by Hall, which they abandoned after two days because it was not a fit place in which to live.

In our opinion the District Court did not err in its denial of Kubeck's motion for judgment of acquittal.

Affirmed.